# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION AT CHICAGO

| | |
|---|---|
| VITAL PHARMACEUTICALS, INC., a Florida corporation d/b/a VPX Sports, <br><br> Plaintiff, <br><br> vs. <br><br> BERLIN PACKAGING LLC, a Delaware limited liability company, <br><br> Defendant. | Case No: 1:21-cv-06866 <br><br> Jury Trial Demanded |

## AMENDED COMPLAINT

Plaintiff, VITAL PHARMACEUTICALS, INC. d/b/a VPX Sports ("VPX"), a Florida corporation, hereby brings the above-styled action against Defendant, BERLIN PACKAGING LLC ("Berlin"), a Delaware limited liability company, alleging as follows:

### PARTIES, JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367(a) as the Court has original jurisdiction over Count V (Sherman Act) and supplemental jurisdiction over the remaining counts, as those are so related that they form part of the same case or controversy under Article III of the United States Constitution.

2. Alternatively, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1), as VPX and Berlin are citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs, and attorney's fees.

3. VPX is a Florida corporation organized and existing under the laws of the State of

Florida, with its principal place of business located in Broward County, Florida.

4. Berlin is a Delaware limited liability company. None of its members are citizens of Florida.[1]

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), as Berlin is headquartered in Chicago, Illinois.

## GENERAL ALLEGATIONS

6. Since its founding in the 1990's, VPX has been a Florida-based manufacturer and seller of sports nutrition supplements and beverage products. Over the course of the past several years, VPX, through product development and promotional efforts, has carved out a substantial market presence with its aforesaid product lines, including, but not limited to, its well-known Redline® energy drink products.

7. Since its inception, Redline® has been packaged in a distinctive 8-ounce plastic bottle paired with a corresponding plastic cap.

8. Those bottles and caps are not manufactured by VPX, but instead sourced from various third-party suppliers.

9. At all times material hereto, Berlin operated as a broker between bottle and cap manufacturers and producers such as VPX.

10. Berlin is one of the largest, if not the largest, packaging brokers in the world,

---

[1] Diversity of citizenship is an alternative basis for the Court's jurisdiction. Should it become necessary for the Court to scrutinize the diversity of the parties, Plaintiff respectfully moves for leave to conduct jurisdictional discovery, as Berlin conceals the identity of its members and members' members. *See* Berlin's Motion to Seal (Doc. 9) (Berlin considers "the identity of direct and indirect owners" to be "confidential and proprietary").

{00632763}  2

branding itself a "genuine packaging juggernaut[2]."

11. According to Berlin's website, "For the past 10 years, Berlin Packaging has grown 10x faster than the industry."

12. Berlin boasts that it does more than $2.5 Billion in revenue per year, with "1,500+ employees," a "global network of suppliers and access to over 50,000 packaging components," and "60+ locations on four continents and over 6 million square feet of warehouse space."

13. A representative of Berlin told VPX, "We control the market" for bottles and caps.

14. Berlin purchases exponentially more beverage packaging annually than VPX does.

15. Berlin has extensive market and purchasing power in the beverage packaging industry across the United States and abroad.

16. Berlin's business model depends on producers fulfilling their packaging needs through Berlin rather than contracting directly with packaging manufacturers.

17. On or about August 1, 2013, VPX and Berlin entered into a 36-month Customer Mold and Supply Agreement (the "Agreement") for the supply of no less than 45 million 8-ounce bottles and caps. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

18. Berlin maintains that the Agreement (by and through reference therein to "Berlin Packaging's standard terms and conditions") is subject to certain website-posted "Terms and Conditions of Sale," a true and correct copy of which is attached hereto as **Exhibit 2**.

19. The Agreement was expressly set to expire on or about July 31, 2016, so long as VPX's minimum purchase requirements were met on or before that date.

20. As expiration of the Agreement approached, VPX attempted, without success, to

---

[2] Juggernaut: "a massive inexorable force, campaign, movement, or object that crushes whatever is in its path." Merriam-Webster Dictionary (available at https://www.merriam-webster.com/dictionary/juggernaut).

obtain binding commitments directly from bottle and cap manufacturers/suppliers (other than Berlin) to supply VPX with bottles and caps for its Redline® product starting after the Agreement's then forthcoming July 31, 2016 expiration, at a lower cost than VPX was paying for bottles and caps sourced through Berlin under the Agreement.

21. VPX's inability to obtain more favorable supply commitments directly from manufacturers/suppliers (other than Berlin) persisted after the Agreement's July 31, 2016 expiration.

22. As result, VPX was compelled to source bottles and caps for its Redline® product through Berlin for a period of years following the Agreement's July 31, 2016 expiration, thus effectively extending the Agreement beyond its July 31, 2016 expiration date.

23. In 2017, VPX learned, upon information and belief, that its inability to obtain supply commitments directly from manufacturers/suppliers (other than Berlin) was due to Berlin's orchestration of surreptitious agreements with those manufacturers/suppliers against selling directly to VPX, both before and since the Agreement's expiration.

24. More recently, VPX learned, upon information and belief that, Berlin orchestrated those surreptitious agreements, not pursuant to rights under non-circumvention agreements or any other potential legal justification, but rather as a naked abuse of its leverage as a major broker and purchasing agent in the bottle and cap industry in restraint of trade.

25. These surreptitious agreements between Berlin and manufacturers/suppliers benefited Berlin by retaining VPX's business beyond the Agreement's expiration and benefited the manufacturers/suppliers by ensuring that Berlin continued to purchase large quantities of products from them to supply Berlin's many other clients.

26. In other words, the manufacturers/suppliers agreed with Berlin not to do business

directly with VPX in order to preserve their larger share of business with Berlin.

27. Upon information and belief, Berlin's moratorium continued, in whole or in part, through August 2019.

28. Upon information and belief, as a result of Berlin's aforesaid legally unjustified moratorium, VPX began incurring pecuniary harm and damage after the Agreement's July 31, 2016 expiration. Specifically, VPX continued sourcing several million bottles and caps through Berlin at a higher cost than VPX would have otherwise incurred if it had sourced those goods from others, which pecuniary harm and damage VPX continued to incur through no earlier than August 2019.

## ALTIRA: 8-OUNCE BOTTLES

29. By the time the expiration of the Customer Mold and Supply Agreement was nearing, VPX's volume requirements for 8-ounce bottles had expanded, and VPX decided to approach manufacturers directly to source these increased requirements.

30. Based on its volumes, and because VPX was able to provide its own bottle molds to manufacturers, it should have had pricing leverage in the marketplace.

31. To this end, VPX approached Altira, which had previously provided bottles to VPX through Berlin.

32. Over the Spring of 2016, VPX and Altira reached a preliminary agreement that Altira would provide VPX with 20 million 8-ounce bottles on an annualized basis.

33. In or about May 2016, Altira abruptly and without explanation withdrew from this preliminary agreement and refused to continue negotiating.

34. Berlin is a major purchaser of plastic products from Altira.

35. On information and belief, in or about May 2016, as a result of direct pressure from Berlin, Altira agreed to cease negotiations with VPX and withdrew from the preliminary

{00632763} 5

agreement.

36. As a result, VPX was obliged to continue sourcing approximately 30 million 8-ounce bottles on an annualized basis through Berlin at prices higher than it would have had to pay to Altira.

37. Through August 2019, VPX was forced to continue to source 10 million 8-ounce bottles on an annualized basis at above-market prices through Berlin.

**BERRY PLASTICS AND CSI: CAPS**

38. By the time the expiration of the Customer Mold and Supply Agreement was nearing, VPX's volume requirements for caps to pair with its 8-ounce bottles had expanded, and VPX decided to approach manufacturers directly to source these increased requirements.

39. VPX initially approached Berry Plastics, a manufacturer of, among other things, bottle caps.

40. Berlin is a major purchaser of plastic products from Berry Plastics.

41. On information and belief, in or about July 2016, as a result of direct pressure from Berlin, Berry Plastics agreed to cease negotiations with VPX and "no-quoted"—that is, refused to even offer a price to—VPX.

42. Later, VPX approached Closure Systems International ("CSI"), a manufacturer of, among other things, bottle caps.

43. Over the Spring of 2016, VPX and CSI reached a preliminary agreement that CSI would provide VPX with 20 million caps on an annualized basis.

44. Berlin is a major purchaser of plastic products from CSI.

45. On information and belief, in or about July 2016, as a result of direct pressure from Berlin, CSI agreed to cease negotiations with VPX and withdrew from the preliminary agreement.

46. In or about May 2017, CSI agreed to provide 30 million caps on an annualized basis

to VPX through Berlin at the true market price.

47. On information and belief, this agreement was contingent on VPX's commitment to continue purchasing 10 million 8-ounce bottles on an annualized basis from Berlin.

48. As a result of Berlin's surreptitious agreement with CSI, VPX was forced to pay Berlin an above-market price for caps from July 31, 2016, through May 2017.

49. Any and all conditions precedent to bringing this action have occurred, have been fulfilled, have been excused or have been waived.

## COUNT I – BREACH OF CONTRACT AGAINST BERLIN

50. VPX incorporates and realleges the allegations in Paragraphs 1 through 49 as if set forth fully within this Count.

51. Berlin agreed to be bound by the terms of the Agreement with VPX.

52. The Agreement provided for a 36-month term, at the end of which, the Agreement would terminate provided VPX met the minimum total volume of purchases during such term.

53. VPX met the minimum total volume of purchases during the term.

54. Berlin materially breached the Agreement by, *inter alia*, using legally unjustified means to compel an extension of the Agreement beyond its 36-month term.

55. As a direct and naturally occurring result of Berlin's breach, VPX has suffered pecuniary harm and other damages.

56. Further, Berlin owed VPX an implied duty of good faith and fair dealing in Berlin's performance of the Agreement.

57. Berlin materially breached its implied obligation of good faith and fair dealing by, *inter alia*, using legally unjustified means to compel an extension of the Agreement beyond its 36-month term.

WHEREFORE, VPX respectfully requests the Court enter judgment in favor of VPX and against Berlin, awarding VPX damages, plus interest, costs and awarding VPX such other and further relief as this Court deems just and proper.

**COUNT II – INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS**

58. VPX incorporates and realleges the allegations in Paragraphs 1 through 49 as if set forth fully within this Count.

59. VPX had a reasonable expectation of entering into a valid business relationship with manufacturers/suppliers of bottles and caps (including Altira, CSI, and Berry Plastics), with a reasonable expectation of reaching commitments for direct sourcing of bottles and caps at prices below those VPX otherwise had to pay for sourcing through Berlin.

60. Berlin had knowledge of those prospective advantageous business relationships.

61. Berlin intentionally and without justification interfered with those prospective business relationships by abusing its leverage as a major broker and purchasing agent in the bottle and cap industry to orchestrate a continuing moratorium upon bottle and cap manufacturers suppling directly to VPX.

62. As a direct and proximate result of Berlin's wrongful interference, VPX incurred pecuniary harm and damage.

WHEREFORE, VPX respectfully requests the Court enter judgment in favor of VPX and against Berlin, awarding VPX damages, plus interest and costs and awarding VPX such other and further relief as this Court deems just and proper.

**COUNT III –VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 et seq.)**

63. VPX incorporates and realleges the allegations in Paragraphs 1 through 49 as if set

forth fully within this Count.

64. This is a claim by VPX against Berlin under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFBPA"), 815 ILCS 505/1 et seq.

65. VPX is a consumer as defined by 815 ILCS 505/1(e).

66. Berlin, at all times material hereto, provided goods or services within the definition of 815 ILCS 505/1(b) and was engaged in trade or commerce as defined by 815 ILCS 505/1(f).

67. In connection therewith, Berlin engaged in a deceptive and unconscionable scheme that included, without exclusion, making duplicitous representations, monopolizing the industry, threatening suppliers, interfering with business relationships, making material misrepresentations and/or omissions, and otherwise engaging in deceptive and unconscionable misconduct, so as to induce VPX to pay Berlin excessive monies for goods which, but for Berlin's wrongful acts, VPX could have obtained for lesser cost.

68. Berlin's deceptive conduct thus implicates consumer protection concerns.

69. Berlin's deceptive, unfair and unconscionable practices in connection with this matter, in violation of ICFBPA, have caused actual pecuniary damages to VPX.

WHEREFORE, VPX respectfully requests the Court enter judgment in favor of VPX and against Berlin, declaring that Berlin violated ICFBPA in connection with this matter, and awarding VPX damages, plus interest, costs and reasonable attorneys' fees provided by the statute, and awarding VPX such other and further relief as this Court deems just and proper.

**COUNT IV – ILLEGAL RESTRAINT OF TRADE UNDER THE SHERMAN ACT
(Sherman Act, 15 U.S.C. § 1).**

70. VPX incorporates and realleges the allegations in paragraphs 1 through 49 as if set

forth fully within this count.

71. This is a claim by VPX against Berlin under the Sherman Act, 15 U.S.C. § 1.

72. Berlin, at all times material hereto, knowingly engaged in a deceptive and unconscionable scheme whereby it abused its leverage as a major broker and purchasing agent in the bottle and cap industry to orchestrate a legally-unjustified moratorium upon manufacturers/suppliers including Altira, CSI, and Berry Plastics from selling directly to VPX.

73. Such aforementioned scheme included, without exclusion, making duplicitous representations, monopolizing the industry, threatening suppliers, interfering with business relationships, making material misrepresentations and/or omissions, and otherwise engaging in deceptive and unconscionable misconduct, so as to prevent VPX from bypassing Berlin in its business dealings with manufacturers.

74. True to its self-proclaimed status as a "genuine packaging juggernaut," Berlin used its outsized market power to crush whatever was in its path: in this case, VPX's desire to cut out the middle man and contract directly with packaging manufacturers.

75. By preventing VPX from contracting with beverage packaging manufacturers directly, Berlin's conduct had an anticompetitive effect in the beverage packaging market in the United States.

76. Berlin's anticompetitive conduct harmed the beverage packaging market by artificially inflating the price for market goods for those beverage manufacturers, like VPX, who have the wherewithal to contract directly with packaging manufacturers.

77. Berlin's anticompetitive conduct further harmed the beverage packaging market by artificially restricting the customer base for manufacturers of beverage packaging products.

78. By engaging in the aforesaid conduct, Berlin has violated the Sherman Act (15

U.S.C. § 1) by restraining trade or commerce among the several States where Berlin and VPX transact business.

79. Berlin's illegal restraint of trade in connection with this matter, in violation of the Sherman Act, has caused actual damages to VPX.

WHEREFORE, VPX respectfully requests the Court enter judgment in favor of VPX and against Berlin, declaring that Berlin violated the Sherman Act in connection with this matter, and awarding VPX damages, plus interest, costs and reasonable attorneys' fees provided by the act, and awarding VPX such other and further relief as this Court deems just and proper.

## COUNT V –UNJUST ENRICHMENT

80. VPX incorporates and realleges the allegations in paragraphs 1 through 49 as if set forth fully within this count.

81. From July 31, 2016 through and including 2019, VPX paid Berlin, and Berlin received, accepted and retained overpayments for bottles and caps caused by Berlin's unfair and unjustified use of its market power to prevent independent manufacturers from dealing directly with VPX.

82. VPX has conferred a benefit on Berlin by over-paying Berlin for bottles and caps due to Berlin's strong-arm tactics.

83. Berlin is aware of this benefit it received from VPX.

84. Berlin has retained the benefit it received from VPX, to wit, the overpayments, and it is inequitable for Berlin to retain such benefit.

WHEREFORE, VPX respectfully requests the Court enter judgment for restitution and other damages and other appropriate relief in favor of VPX and against Berlin, plus interest, reasonable attorney fees, and costs.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury on all claims so triable.

Dated: February 9, 2022

                Respectfully submitted:

                */s/ Michael T. Crabb*
                Michael T. Crabb, Bar No. 24395
                KUCKELMAN TORLINE KIRKLAND, INC.
                10740 Nall Avenue, Suite 250
                Overland Park, KS 66211
                (913) 948-8610 (phone)
                (913) 948-8611 (fax)
                mcrabb@ktk-law.com

                *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on February 9, 2022, the foregoing document was filed via the Court's CM/ECF electronic filing system which will automatically send notice to all counsel of record.

                */s/ Michael T. Crabb*
                Attorney for Plaintiff Vital Pharmaceuticals, Inc.