UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VITAL PHARMACEUTICALS, INC., d/b/a VPX Sports, | ) ) ) | |
| Plaintiff, | ) ) ) | 21 C 6866 |
| | ) | Judge Gary Feinerman |
| vs. | ) ) | |
| BERLIN PACKAGING LLC, | ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION AND ORDER

Vital Pharmaceuticals, Inc. d/b/a VPX Sports alleges that its bottle and cap broker, Berlin Packaging LLC, violated Section 1 of the Sherman Act, 15 U.S.C. § 1, and state law by reaching agreements with bottle and cap manufacturers under which the manufacturers would not sell directly to VPX. Doc. 15. Berlin moves to dismiss under Civil Rules 12(b)(1) and 12(b)(6). Doc. 17. The Sherman Act claim is dismissed without prejudice, the court relinquishes its supplemental jurisdiction over the state law claims, and VPX will be given a chance to replead.

### Background

In resolving a Rule 12(b)(6) motion, as in a Rule 12(b)(1) motion asserting a facial challenge to subject matter jurisdiction, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016) (Rule 12(b)(6)); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (Rule 12(b)(1)). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in VPX's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v.*

*Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to VPX as the pertinent materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

VPX sells sports nutrition supplements and beverages. Doc. 15 at ¶ 6. VPX does not manufacture its own bottles and caps, but instead sources them from others. *Id*. at ¶ 8. In 2013, VPX entered a 36-month contract with Berlin under which Berlin would supply VPX with bottles and caps. *Id*. at ¶ 17.

Berlin is a "broker between bottle and cap manufacturers and [beverage] producers," and "is one of the largest, if not the largest, packaging brokers in the world, branding itself a 'genuine packaging juggernaut.'" *Id*. at ¶¶ 9-10. "A representative of Berlin told VPX, '[w]e control the market' for bottles and caps." *Id*. at ¶ 14. According to the complaint, "Berlin has extensive market and purchasing power in the beverage packaging industry across the United States and abroad." *Id*. at ¶ 15.

As VPX's contract with Berlin was approaching its expiration date, VPX hoped to "cut out the middle[]man" and source bottles and caps directly from manufacturers at a lower price, but it was unsuccessful. *Id*. at ¶¶ 20, 74. VPX later learned that its lack of success was due to secret agreements that Berlin had reached with bottle and cap manufacturers to not sell directly to VPX. *Id*. at ¶¶ 20-26. According to VPX, Berlin wished to "retain[] VPX's business beyond the [contract]'s expiration," and the manufacturers agreed to Berlin's wishes "in order to preserve their larger share of business with Berlin." *Id*. at ¶¶ 25-26. In support, VPX describes its unsuccessful efforts to contract with three bottle and cap manufacturers—from which Berlin

2

is a "major purchaser of plastic products"—before its contract with Berlin expired. *Id*. at ¶¶ 20, 29-48.

As for bottles, VPX approached Altira, which had previously provided bottles to VPX through Berlin. *Id*. at ¶¶ 29-31. In 2016, VPX and Altira reached a preliminary agreement under which Altira would provide VPX with 20 million bottles annually. *Id*. at ¶ 32. Around May 2016, Altira ceased negotiations and withdrew from the preliminary agreement. *Id*. at ¶ 35.

As for caps, VPX approached Berry Plastics and Closure Systems International ("CSI"). *Id*. at ¶¶ 40, 42. Around July 2016, Berry Plastics ceased negotiations with VPX and refused to offer VPX a price quote. *Id*. at ¶ 41. In Spring 2016, VPX and CSI reached a preliminary agreement under which CSI would provide VPX with 20 million caps annually. *Id*. at ¶ 43. Around July 2016, CSI also ceased negotiations and withdrew from the preliminary agreement. *Id*. at ¶ 45.

VPX and Berlin's contract expired on July 31, 2016. *Id*. at ¶ 28. Until August 2019, VPX continued to source millions of bottles through Berlin at above-market prices. *Ibid*. VPX purchased caps from Berlin at above-market prices until May 2017, at which point CSI agreed to provide VPX 30 million caps annually through Berlin "at the true market price." *Id*. at ¶¶ 46, 48.

## Discussion

VPX claims that Berlin's alleged agreements with the bottle and cap manufacturers to refuse to sell directly to VPX violated Section 1 of the Sherman Act, 15 U.S.C. § 1. Doc. 15 at ¶¶ 70-79. To state a Section 1 claim, a plaintiff must allege facts sufficient to show "three things: (1) defendants had a contract, combination, or conspiracy ('an agreement'); (2) as a result, trade in the relevant market was unreasonably restrained; and (3) [the plaintiff was] injured." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 762 (7th Cir.

2015). "The inability to state a claim for relief on any one of the three prongs [warrants dismissal]." *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 704 (7th Cir. 2021). In seeking dismissal, Berlin contends that VPX has failed to plausibly allege that it unreasonably restrained trade in a relevant market. Doc. 18 at 10-11.

"The rule of reason is the accepted standard for testing whether a practice restrains trade in violation of § 1." *Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007). "Under a [r]ule of [r]eason analysis, the plaintiff carries the burden of showing that an agreement or contract has an anticompetitive effect on a given market within a given geographic area." *Agnew v. NCAA*, 683 F.3d 328, 335 (7th Cir. 2012). However, the court "may dispense with the rule of reason inquiry if the restraint falls into a certain subset of agreements, known as 'per se' violations." *Always Towing & Recovery, Inc.*, 2 F.4th at 704. "Typically only horizontal restraints—restraints imposed by agreement between competitors—qualify as unreasonable per se." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283–84 (2018) (internal quotation marks omitted); *see also Agnew*, 683 F.3d at 336 ("Horizontal price fixing and output limitation are classic examples of behavior that is considered anticompetitive per se."). Vertical restraints— "restraints imposed by agreement between firms at different levels of distribution"—are generally "assessed under the rule of reason." *Am. Express Co.*, 138 S. Ct. at 2284 (internal quotation marks omitted).

The complaint alleges that Berlin is a "broker" that purchases bottles and caps from bottle and cap manufacturers to distribute to beverage producers like VPX. Doc. 15 at ¶¶ 9, 16. The alleged agreements between Berlin and the bottle and cap manufacturers are therefore vertical restraints, as they are "between firms at different levels of distribution." *Am. Express Co.*, 138 S. Ct. at 2284; *see also Always Towing & Recovery, Inc.*, 2 F.4th at 705-06 (holding that a

contract between a seller and buyer "represents a vertical restraint"); *Elecs. Commc'ns Corp. v. Toshiba Am. Consumer Prod., Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) (holding that the complaint's allegation that the defendant distributer "applied pressure to prevent" the defendant supplier from selling products directly to the plaintiff alleged a vertical restraint). Thus, the rule of reason applies to the agreements alleged by VPX. *See Am. Express Co.*, 138 S. Ct. at 2284; *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 348 (7th Cir. 2022) ("[V]ertical restraints are analyzed under the fact-specific rule of reason.").

In pressing the contrary result, VPX contends that Berlin's alleged agreements with the bottle and cap manufacturers are properly classified as horizontal because Berlin and the manufacturers compete at the distribution level in selling bottles and caps to beverage producers. Doc. 20 at 7 ("Although Berlin is not a manufacturer of packaging products, all four entities are distributors. All four entities sell packaging products directly to producers like VPX."). VPX is incorrect. As the Second Circuit explained, an agreement between a distributor and a manufacturer is a vertical restraint, and thus subject to the rule of reason, "even if the distributor and manufacturer also compete at the distribution level, where … the manufacturer distributes its products [both] through a distributor and [also] independently (so-called 'dual distribution' arrangements)." *Elecs. Commc'ns Corp.*, 129 F.3d at 243-44 (collecting cases, including *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 889 F.2d 751, 753 (7th Cir. 1989), which held that dual distribution agreements are vertical restraints).

VPX next quotes *In re Dealer Management Systems Antitrust Litigation*, 313 F. Supp. 3d 931, 951 (N.D. Ill. 2018), which in turn quotes *Toys 'R' Us, Inc. v. FTC*, 221 F.3d 928, 932 (7th Cir. 2000), for the proposition that "[j]oint efforts by a firm or firms to disadvantage competitors by either directly denying or persuading or coercing suppliers or customers to deny

relationships the competitors need in the competitive struggle merit per se treatment." Doc. 20 at 7. Both cases are distinguishable. In *Toys 'R' Us*, the Seventh Circuit was faced with a hub-and-spoke conspiracy where, in order to overcome its toy suppliers' reluctance to promise not to sell to its competitors, the defendant toy retailer "orchestrated a horizontal agreement among its key suppliers" in which the suppliers "agreed to join in the boycott *on the condition that their competitors would do the same*." 221 F.3d at 932; *see also Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 736 (7th Cir. 2004) ("*Toys 'R' Us* made very clear that despite the vertical agreements between Toys 'R' Us and individual manufacturers, the conspiracy at issue was horizontal."). VPX does not allege any similar concerted behavior among the bottle and cap manufacturers here. *See Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 842 (7th Cir. 2020) (holding that a "hub-and-spokes" conspiracy "requires a plaintiff to allege both that there was a central coordinating party (the 'hub'), and that each participant (along the 'rim') recognized that it was part of the greater arrangement, and it coordinated or otherwise carried out its duties as part of the broader group"); *PSKS, Inc. v. Leegin Creative Leather Prod., Inc.*, 615 F.3d 412, 420 (5th Cir. 2010) ("In the absence of an assertion that retailers agreed … among themselves, there is no wheel and therefore no hub-and-spoke conspiracy, and that allegation was therefore properly dismissed.").

Nor is VPX assisted by *Dealer Management Systems*, which carefully distinguished the "horizontal agreements (between Defendants)" from the "vertical agreements (between each Defendant and its dealers and vendors)" alleged there. 313 F. Supp. 3d at 949. When quoting *Toys 'R' Us*, the *Dealer Management Systems* court addressed not agreements between firms at different distribution levels, but rather a horizontal agreement between two data integration services firms to drive other competitors out of the data integration market. *Id*. at 950-52. Thus,

6

neither *Toys 'R' Us* nor *Dealer Management Systems* supports VPX's submission that Berlin's agreements with the bottle and cap manufacturers are horizontal restraints and thus per se unreasonable.

"[A] plaintiff's threshold burden under the [r]ule of [r]eason analysis involves the showing of a precise market definition in order to demonstrate that a defendant wields market power, which, by definition, means that the defendant can produce anticompetitive effects." *Agnew*, 683 F.3d at 337; *see also Am. Express Co.*, 138 S. Ct. at 2285 ("[C]ourts usually cannot properly apply the rule of reason without an accurate definition of the relevant market."). A precise definition of "[t]he relevant market has both a product and a geographic dimension." *Republic Tobacco Co.*, 381 F.3d at 738. "In defining a market, [the court] must consider substitution both by buyers and by sellers … ." *Blue Cross & Blue Shield Univ. of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1410 (7th Cir. 1995); *see also Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911, 918 (7th Cir. 2020) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.") (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). "Although market definition is a deeply fact-intensive inquiry, failure to offer a plausible relevant market is a proper ground for dismissing an antitrust claim." *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 87 F. Supp. 3d 874, 886 (N.D. Ill. 2015) (internal quotation marks and citations omitted).

VPX has not met its burden to allege a cognizable market in which Berlin has market power. For starters, VPX never clearly identifies the product market. The complaint refers to "the beverage packaging market," Doc. 15 at ¶¶ 75-77, as well as "the bottle and cap industry," *id*. at ¶¶ 24, 72, while also discussing separate market prices for caps and bottles, *id*. at ¶¶ 37, 46,

7

48. In response to Berlin's contention that the complaint does not identify a product market, Doc. 18 at 11, VPX's brief continued to refer both to "the beverage packaging industry" and "the market for bottles and caps," Doc. 20 at 8 (internal quotation marks omitted). VPX's failure to clearly identify the product and market at issue disables the court from engaging in the necessary consideration of potential substitutes. *See J&S Cmty. Pharmacy Inc. v. Prime Therapeutics LLC*, 2018 WL 4871137, at *3 (N.D. Ill. Aug. 16, 2018) (holding that the plaintiff failed to plead a relevant market where the complaint lacked "factual allegations describing substitute products or cross-elasticity of demand"), *aff'd sub nom. Sharif Pharmacy, Inc. v. Prime Therapeutics, LLC*, 950 F.3d 911 (7th Cir. 2020). And without an identified relevant market, the court cannot assess whether Berlin's alleged agreements with the bottle and cap manufacturers could have had anticompetitive effects. *See Agnew*, 683 F.3d at 337 ("The entire point of the Sherman Act is to protect competition in the commercial arena; without a commercial market, the goals of the Sherman Act have no place.") (citation omitted). In sum, VPX has "ma[de] no effort to properly identify the … market at issue, plead its rough contours, or account for the commercial reality of the transaction, and it is not the [c]ourt's duty to do so." *Rock v. NCAA*, 928 F. Supp. 2d 1010, 1022 (S.D. Ind. 2013).

Even assuming VPX sufficiently alleged a cognizable relevant market, VPX does not meet its burden to show that Berlin's alleged agreements with the bottle and cap manufacturers had a substantial anticompetitive effect. A plaintiff "can make this showing directly" through "proof of actual detrimental effects on competition" or "indirectly" by "proof of market power plus some evidence that the challenged restraint harms competition." *Am. Express Co.*, 138 S. Ct. at 2284 (internal quotation and alteration marks omitted). VPX's response brief attempts to take the latter approach. Doc. 20 at 7-8.

Market power is the "power to raise prices significantly above the competitive level without losing all of one's business" and is "normally inferred from the possession of a substantial percentage of the sales in a market carefully defined in terms of both product and geography." *Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 666-67 (7th Cir. 1987) (internal quotation marks omitted) (explaining that a market share of "usually at least 50%" is necessary to establish market power). The complaint alleges in a conclusory manner that Berlin has market power, Doc. 15 at ¶¶ 15, 74, but conclusory allegations do not forestall dismissal under Rule 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[O]n a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotation marks omitted). And the complaint does not back up its conclusory allegations with factual assertions regarding Berlin's market share or any pertinent facts about other distributors in the market. *See Ball Mem'l Hosp., Inc. v. Mut. Hosp. Ins., Inc.*, 784 F.2d 1325, 1336 (7th Cir. 1986) ("The [market power] inquiry in each case is the ability to control output and prices, an ability that depends largely on the ability of other firms to increase their own output in response to a contraction by the defendants.").

Instead, the complaint focuses on Berlin's size as "one of the largest, if not the largest, packaging brokers in the world." Doc. 15 at ¶¶ 10-12. But allegations of firm size "alone are meaningless" without allegations describing the market because other distributors, "no matter what their size," could "have the ability to take business away from [Berlin] if it raised its prices." *Valley Liquors, Inc.*, 822 F.2d at 668; *see also FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 20 (D.D.C. 2021) (holding that the FTC did not plausibly allege that Facebook had market power when "the confines of [the market] [we]re only somewhat fleshed out and the players within … remain almost entirely unspecified"). Also insufficient are VPX's allegations that

9

Berlin "brand[s] itself [as] a 'genuine packaging juggernaut'" and told VPX that it "'control[s] the market' for bottles and caps." Doc. 15 at ¶¶ 10, 13. Those statements are not facts showing that Berlin is able to raise prices in a relevant market, especially given "how tenuously[] the market has been defined." *Facebook, Inc.*, 560 F. Supp. 3d at 17 (internal quotation marks omitted). And, as shown above, VPX does not make clear whether the relevant market is "bottles and caps" in the first place.

Thus, VPX has not met its burden to plausibly allege that Berlin's agreements had a substantial anticompetitive effect for purposes of a rule of reason analysis, and its Section 1 claim accordingly is dismissed. *See Rock*, 928 F. Supp. 2d at 1020-24 (dismissing a Section 1 claim where the plaintiffs failed to allege a cognizable market and "anticompetitive effects in their market as pled"). Given this disposition, there is no need to reach Berlin's argument that the Section 1 claim is barred by the statute of limitations. Doc. 18 at 7-8.

VPX also brings state law claims for breach of contract, tortious interference, deceptive practices, and unjust enrichment. Doc. 15 at ¶¶ 50-69, 80-84. Because VPX acknowledged at the motion hearing that the parties are not completely diverse, Doc. 30, the only basis for jurisdiction over those claims is the supplemental jurisdiction under 28 U.S.C. § 1367(a). Section 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining [supplemental] state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007); *see also Dietchweiler ex rel. Dietchweiler v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (same). The court will follow that general rule here, particularly because the federal claim

is dismissed at an early stage. *See Phillips v. Baxter*, 768 F. App'x 555, 560 (7th Cir. 2019) ("As to the state-law claims, after dismissing [the plaintiff's] federal claims at such an early stage of litigation, the district court should have followed the presumption of relinquishing jurisdiction over them."); *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 285 (7th Cir. 2007) (holding that the district court properly relinquished supplemental jurisdiction over the plaintiff's state law claims "given the fact that her federal claims were dismissed at such an early stage on a purely legal ground").

**Conclusion**

VPX's Sherman Act claim is dismissed under Rule 12(b)(6), and the court relinquishes supplemental jurisdiction over VPX's state law claims under 28 U.S.C. § 1367(c)(3). The dismissal of the Sherman Act claim and relinquishment of jurisdiction over the state law claims are without prejudice to VPX filing a second amended complaint that repleads all its claims. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). VPX has until October 27, 2022 to file a second amended complaint. If it does not do so, the dismissal of its Sherman Act claim will convert automatically to a dismissal with prejudice, jurisdiction will be relinquished over its state law claims, and judgment will be entered. If VPX files a second amended complaint, Berlin will have until November 17, 2022 to file a responsive pleading.

Finally, Berlin requests costs and attorney fees under 28 U.S.C. § 1919. Doc. 18 at 15. Section 1919 provides: "Whenever any action or suit is dismissed in any district court … for want of jurisdiction, such court may order the payment of just costs." 28 U.S.C. § 1919. No

§ 1919 award is warranted at this juncture. As an initial matter, VPX has been given leave to replead. Moreover, Berlin has not shown that an award of costs would be "fair and equitable based on the totality of circumstances." *Otay Land Co. v. United Enters. Ltd.*, 672 F.3d 1152, 1157 (9th Cir. 2012). And, finally, § 1919 does not authorize attorney fee awards. *See Signorile v. Quaker Oats Co.*, 499 F.2d 142, 145 (7th Cir. 1974) (holding that the Supreme Court's holding that "costs" under 28 U.S.C. § 1920 does not include attorney fees "applies with equal force to section 1919") (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 720 (1967)).

September 29, 2022

_____
United States District Judge